In re ESTATE OF Albena M. FRITTS.

**Appeal of Ralph Fritts.**

Superior Court of Pennsylvania.

Argued April 5, 2006.
Filed Aug. 17, 2006.

---

Keith Welks, Harrisburg, for appellant.

Steve N. Goudsouzian, Easton, for appellee.

BEFORE: STEVENS, GANTMAN and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 Appellant, Ralph Fritts, appeals from the order of the Northampton County Court of Common Pleas, Orphans' Court Division, dismissing his action to set aside the testamentary dispositions of the decedent, Albena M. Fritts. We affirm, and find that despite having been entered prior to the effective date of Pa.R.A.P. 311(a)(8), the order is appealable, having disposed of all parties and claims and ended the probate proceedings.

¶ 2 Albena died on March 23, 2004, at the age of 92. Her husband, Charles Martin Fritts, Appellant's brother, had died in 1980. The couple married in 1955, but had no children. Appellant and Charles inherited significant stock portfolios from their mother, who died sometime prior to 1980. Albena and her husband decided that if she outlived him, she would retain the stock portfolio until her death, at which time Charles' inheritance would return to the Fritts family by operation of Albena's will. On August 21, 1997, she executed a will leaving 35% of her estate to Appellant, a bequest which she believed would adequately convey Charles' family money back to the Fritts. The will also left 40% of her estate to niece Shirley Blomquist,[1] 15% to Bernice Mekolites,[2] and 10% to niece Gloria Gardner.

¶ 3 Appellant left Pennsylvania in 1978, but continued to visit Albena twice a year and maintained regular phone contact with her for the next twenty years. On December 4, 1997, Appellant arrived at Albena's home on one of his semi-annual visits, and discovered an unpaid bill from Nicholas R. Sabatine, Esq., who had prepared Albena's most recent will in August, 1997. Appellant took Albena to Attorney Sabatine's office and voiced his concern for Albena's health and finances. Attorney Sabatine spoke with Albena alone, at which time she expressed her wish that Appellant assume control of her finances. After determining that Albena was coherent and rational, Attorney Sabatine prepared a power of attorney naming Appellant as attorney-in-fact. Albena executed the power of attorney and then immediately visited Dr. McEvoy, a physician whom Attorney Sabatine had suggested in response to Appellant's concerns about Albena's health. Dr. McEvoy examined Albena twice in December of 1997.

¶ 4 Appellant closed several of Albena's bank accounts once he gained power of attorney, and transferred her funds to a higher-yielding brokerage account. Albena was present for these changes and Appellant immediately informed her of what would happen to her old accounts as a result. At this time, Appellant wrote Shirley, explaining the alterations to Albena's finances. On March 7, 1998, Albena received a notice from one of her former

---

1. Shirley is the proponent of Albena's testamentary dispositions and Appellee in this case. She is a blood relative of Albena and not a member of the Fritts family.

2. Albena's sister and Shirley's mother.

banks indicating an account balance of $0. Albena did not remember that Appellant had closed her old accounts and became confused and upset. Rose Fashano, a neighbor who looked after Albena on a regular basis, was present in Albena's home and suggested that Appellant may have transferred her funds to a different location. Shirley arrived at the house but did not recall Appellant's letter advising her of the changes he had made to Albena's finances. Shirley therefore failed to remind Albena that Appellant had properly transferred her money to new accounts, which explained why statements from Albena's former banks were reflecting account balances of $0. The police were called and suggested that Albena and her family contact an attorney.

¶ 5 Shirley took Albena to see Karl Kline, Esq., on March 9, 1998. Albena explained that because she was upset with Appellant for changing her finances, she wished to remove him from her will and to make Shirley her attorney-in-fact. Attorney Kline determined that Albena possessed testamentary capacity and drafted a new will excluding Appellant and shifting the bulk of his former bequest to Shirley, whose portion of the estate increased from 40% in the will executed August 21, 1997 to 61.5% in the will executed on March 9, 1998.[3] A week later, Attorney Kline informed Appellant that Albena had revoked his power of attorney and designated Shirley as her new attorney-in-fact.

¶ 6 On March 25, 1998, while Shirley was visiting Albena, Appellant and Attorney Sabatine arrived unannounced with some documents for Albena to sign. Albena could not recall who Attorney Sabatine was, and he left without securing her signatures on any of the documents. Appellant, Shirley, and Albena decided that it was best for Shirley to serve as Albena's attorney-in-fact, and agreed that Albena was coherent and understood the decision she had made.

¶ 7 After meeting privately with Albena the following week, Attorney Kline prepared another form, naming Shirley as attorney-in-fact, that Albena executed on March 31, 1998. Because of Appellant's surprise appearance the week before, Attorney Kline was concerned that Appellant might again visit Albena without warning, find her alone, and press her to sign documents that could restore his power of attorney or perhaps his share of the estate. More than a month later, Attorney Kline met again with Albena, this time to execute an irrevocable trust and a pour over will intended to insulate her further from any future actions Appellant might take to restore his share of the estate or power of attorney. The pour over will executed on May 8, 1998 contained identical dispositions to the will executed on March 31st.

¶ 8 Albena died in March of 2004. Letters Testamentary were granted in accordance with her May 8, 1998 will. Appellant petitioned the Orphans' Court to set aside her last will and testament as the product of undue influence. A non-jury trial was held on January 26 and 27, 2005, and further testimony was taken by way of deposition on February 23rd. The Orphans' Court found Appellant did not carry his burden of proving two of the three necessary elements of undue influence, and accordingly dismissed the petition to set aside the will dated May 8, 1998. This appeal followed.

¶ 9 Appellant submits two issues on appeal:

---

**3.** Bernice's and Gloria's shares of the estate increased to 23.1% and 15.4%, respectively, under the new will.

IS A *PRIMA FACIE* CASE OF UNDUE INFLUENCE ESTABLISHED WHERE UNCONTROVERTED EVIDENCE DEMONSTRATED THAT A DECEDENT HAD BEEN DIAGNOSED WITH MILD TO MODERATE DEMENTIA, WAS UNABLE TO RECALL OR COMPREHEND SIGNIFICANT RECENT FINANCIAL TRANSACTIONS SHE CONDUCTED, WAS UNABLE TO RECALL HER RELATIVE AND HER ATTORNEY BEING INVOLVED IN THOSE TRANSACTIONS; AND DEMONSTRATED THAT THE DECEDENT WAS ELDERLY AND WHOLLY DEPENDENT UPON A NIECE WHO SELECTED NEW COUNSEL FOR DECEDENT, GAINED DECEDENT'S POWER OF ATTORNEY, AND THEN BENEFITED SUBSTANTIALLY FROM THE REVISED WILL THAT THE NEW ATTORNEY PREPARED FOR DECEDENT?

DID THE BENEFICIARY OF THE ALLEGED UNDUE INFLUENCE DISPROVE SUCH INFLUENCE WHEN SHE FAILED TO OFFER ANY CREDIBLE EXPLANATION FOR A PATTERN OF MISREPRESENTATIONS AND DECEPTIONS DESIGNED TO INCREASE HER INHERITANCE?

(Appellant's Brief at 4).

¶ 10 As a preliminary matter, we must determine whether the Orphans' Court's order of July 1, 2005 dismissing Appellant's claim is appealable. We examine the issue of appealability *sua sponte* because it affects our jurisdiction over the case. *In re Estate of Cherwinski,* 856 A.2d 165 (Pa.Super.2004) (citation omitted). Pa.R.A.P. 341(a)-(b)(1) provides that parties may appeal only from final orders of the trial court, defining a final order as, *inter alia,* any order that disposes of all claims and parties. *In re Miscin,* 885 A.2d 558, 561 (Pa.Super.2005) (citation omitted). Prior to 2004, this Court typically permitted immediate appeals from probate orders determining the validity of a will or trust. *See In re Estate of Janosky,* 827 A.2d 512 (Pa.Super.2003); *In re Estate of Luongo,* 823 A.2d 942 (Pa.Super.2003), *appeal denied,* 577 Pa. 722, 847 A.2d 1287 (2003). However, on February 26, 2004, a panel of this Court ruled that interlocutory orders from the Orphans' Court were not appealable under Rule 341(b). *In re Estate of Schmitt,* 846 A.2d 127, 129–30 (Pa.Super.2004). In *Schmitt,* the will contestant appealed from an Orphans' Court order striking his caveat to the will and admitting the will to probate. *Id.* at 128. We reasoned that because the Orphans' Court order was interlocutory in nature, it was not final and appealable under Rule 341(b). *Id.* at 129. We quashed the appeal, concluding that " '[i]n order to avoid piecemeal litigation, no appeal will be permitted from an interlocutory order unless specifically provided for by statute.' " *Schmitt, supra* at 129 (quoting *In re Estate of Borkowski,* 794 A.2d 388, 389 (Pa.Super.2002)).

¶ 11 In response to *Schmitt,* our Appellate Court Procedural Rules Committee amended Rule 311 specifically to permit immediate appeals from orders of the Orphans' Court determining the validity of a will or trust, despite the fact that these orders are often interlocutory. *See* Pa. R.A.P. 311(a)(8), *Explanatory Comment–2005.* Although the amendment was adopted on June 29, 2005, it did not become effective until September 14, 2005. The instant Orphans' Court order was filed on July 1, 2005, prior to the effective date of the amended rule. Accordingly, this case is still bound by the ruling of *Schmitt.* However, the instant facts are distinct from those of *Schmitt* and its progeny, such as *Miscin, supra* (quashing appeal from Orphans' Court order that did not

dispose of appellant's claim but merely refused to consider petition on merits while appellee's involuntary commitment was in place); thus we find that the order dismissing Appellant's action was final and appealable under Rule 341(b).

¶ 12 Most notably, the Orphans' Court order of July 1, 2005 disposes of all parties. *See* Pa.R.A.P. 341(b)(1). The appellant in *Schmitt* appealed from an order admitting the case to probate although the Orphans' Court had not yet disposed of all the parties or their claims prior to his appeal. *Schmitt, supra* at 129. Accordingly, if this Court had decided *Schmitt* on the merits, the case would have been returned to the Orphans' Court for further proceedings on potential new claims that might have resulted in new appeals. We therefore treated the trial court order as interlocutory, and quashed the appeal to avoid the specter of "piecemeal litigation." *See id.* In the instant case, however, the appeal lies from an order entered following a probate hearing in which the sole cause of action of the sole contestant was dismissed. Therefore, to grant appellate review would not engender the sort of piecemeal litigation that our Court sought to avoid in *Schmitt* and *Miscin.* The Orphans' Court July 1, 2005 order ended the probate proceedings, disposed of all parties and their claims, and is therefore final and appealable pursuant to Rule 341(b). *See Janosky, supra* (addressing appeal from Orphans' Court order denying probate). Thus, we hold that the instant appeal is proper and we may review the merits of Appellant's claim.

¶ 13 Appellant contends that he established each element of undue influence at trial by showing that: (1) Albena had a weakened intellect; (2) Shirley had a confidential relationship with Albena; and (3) Shirley benefits substantially from the will. He argues that his own testimony, and

that of Rose and Dr. McEvoy, convincingly established that Albena "manifested a continuing pattern of behavior ... that was characterized by complete bewilderment, profound forgetfulness and disorientation." (Appellant's Brief at 43). Furthermore, Appellant contends that the trial court premised its finding that Albena did not suffer from a weakened intellect on the testimony of witnesses who had a direct or indirect interest in the outcome of this case, and overlooked the evidentiary support for the opposite conclusion. Appellant also argues that the trial court erred as a matter of law by according little weight to Dr. McEvoy's testimony that Albena already suffered from moderate to mild dementia in December, 1997. We disagree.

¶ 14 We will not reverse the Orphans' Court's decision absent "an abuse of discretion or a fundamental error in applying the correct principle of law." *Luongo, supra* at 951 (citing *In re Estate of Elias,* 429 Pa. 314, 239 A.2d 393, 394 (1968)). "Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of that discretion." *In re Estate of Presutti,* 783 A.2d 803, 805 (Pa.Super.2001) (quoting *In re Estate of Angle,* 777 A.2d 114, 122–23 (Pa.Super.2001)). "If the court's findings are properly supported, we may reverse its decision only if the rules of law on which it relied are palpably wrong or clearly inapplicable." *Owens v. Mazzei,* 847 A.2d 700, 706 (Pa.Super.2004) (citing *In re Estate of Harrison,* 745 A.2d 676, 678–79 (Pa.Super.2000), *appeal denied,* 563 Pa. 646, 758 A.2d 1200 (2000)).

> Once a will has been probated, the contestant who claims that the will was procured by undue influence has the burden of proof. A *prima facie* case of

undue influence is established and the burden of proof is shifted to the will's proponent when three elements are established: 1) there was a confidential relationship between the proponent and testator; 2) the proponent receives a substantial benefit under the will; 3) the testator had a weakened intellect.

*Angle, supra* at 123 (Pa.Super.2001) (citations omitted).

[U]ndue influence is a subtle, intangible and illusive thing, generally accomplished by a gradual, progressive inculcation of a receptive mind. Consequently, its manifestation may not appear until long after the weakened intellect has been played upon.

*Owens, supra* at 706 (quoting *In re Estate of Clark*, 461 Pa. 52, 334 A.2d 628, 634 (1975)) (internal quotations and citation omitted). Our Court has stated:

Conduct constituting influence **must** consist of "imprisonment of the body or mind, or fraud, or threats, or misrepresentations, or circumvention, or inordinate flattery, or physical or moral coercion, to such a degree as to prejudice the mind of the testator, to destroy his free agency and to operate as a present restraint upon him in the making of a will."

*Luongo, supra* at 964 (quoting *Angle, supra* at 123) (emphasis in original).

■ ¶ 15 "Although our cases have not established a bright-line test by which weakened intellect can be identified to a legal certainty, they have recognized that it is typically accompanied by persistent confusion, forgetfulness and disorientation." *Owens, supra* at 707 (citing *In re Estate of Glover*, 447 Pa.Super. 509, 669 A.2d 1011, 1015 (1996), *appeal denied*, 547 Pa. 728, 689 A.2d 233 (1997)). In a case of undue influence, a trial court has greater latitude to consider medical testimony describing a decedent's condition at a time

remote from the date that the contested will was executed. *Clark, supra* at 634. However, "[i]f the court's decision rests upon legally competent and sufficient evidence, we will not revisit its conclusions." *Owens, supra* at 707 (citing *Clark, supra* at 635). "[O]ur review of the court's factual findings is limited to considering whether those findings have support in the record ...." *In re Estate of Geniviva*, 450 Pa.Super. 54, 675 A.2d 306, 310 (1996), *appeal denied*, 546 Pa. 666, 685 A.2d 545 (1996).

¶ 16 At trial, Rose testified that prior to December, 1997 she observed Albena placing garbage in her late husband's car, hanging soiled clothes in the closet instead of laundering them, and occasionally forgetting to eat. However, Albena's next-door neighbor, Thomas Todaro, testified that Albena's mental state was not deteriorating throughout this period, and disputed Rose's characterization of Albena's appearance and living conditions. Mr. Todaro's testimony was corroborated by Shirley Blomquist, her husband, her daughter, her son-in-law, and Attorneys Sabatine and Kline. Only Appellant corroborated Rose's testimony at trial. The trial court did not abuse its discretion by finding portions of their testimony incredible where it conflicted with the majority of testimony offered by other witnesses, and we will not reverse these findings. *See Presutti, supra.*

■ ¶ 17 Appellant's claim that the trial court erred as a matter of law by not according great weight to Dr. McEvoy's testimony is without merit. As noted, Appellant correctly contends that where undue influence is alleged, the trial court has greater latitude to consider medical testimony concerning a decedent's condition at a time remote from the date when the contested will was executed. *See Clark,*

*supra.* However, Appellant asserts that the remoteness in time of Dr. McEvoy's medical examination of Albena[4] is the only reason the trial court did not accord great weight to his testimony. In fact, the trial court noted that it did not accord great weight to the doctor's testimony in large part because it was inconsistent internally and also with the testimony offered by the majority of witnesses who had personal contact with Albena. Therefore, we find that the trial court did not err as a matter of law by concluding that Albena did not suffer from a weakened intellect. *Compare with Clark, supra* at 633, 634 (finding valuable medical testimony remote in time from date will was executed, but not from period that weakened intellect was "played upon," where supported by lay witness testimony).

¶ 18 Appellant next alleges that the trial court abused its discretion and misapplied the law in finding that Shirley did not have a confidential relationship with Albena. He claims that Shirley spent an inordinate amount of time with Albena and "provided for every aspect of her care and necessities." (Appellant's Brief at 33). Appellant concludes that the trial court "completely disregarded the entire body of evidence" when it found that no confidential relationship existed between Shirley and Albena. (*Id.*). Furthermore, Appellant contends that the trial court committed the following errors of law in not finding a confidential relationship: (1) ruling that a power of attorney must be granted to establish such a relationship; (2) concluding that because Shirley did not exercise undue influence after she gained power of attorney, any confidential relationship existing between her

and Albena after this date would be irrelevant; and (3) failing to accord special significance to the fact that power of attorney was granted to a person on whom Albena was wholly dependent.

¶ 19 A confidential relationship exists when "the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed." *Owens, supra* at 709 (internal quotations omitted). "[It] is marked by such a disparity in position that the inferior party places complete trust in the superior party's advice and seeks no other counsel, so as to give rise to a potential abuse of power." *eToll Inc. v. Elias/Savion Advertising, Inc.,* 811 A.2d 10, 23 (Pa.Super.2002) (citing *Basile v. H & R Block,* 777 A.2d 95, 102 (Pa.Super.2001), *appeal denied,* 569 Pa. 714, 806 A.2d 857 (2002)). The clearest indication of a confidential relationship is that an individual has given power of attorney over her savings and finances to another party. *In re Estate of Lakatosh,* 441 Pa.Super. 133, 656 A.2d 1378, 1383 (1995) (citing *In re Estate of Bankovich,* 344 Pa.Super. 520, 496 A.2d 1227, 1229 (1985)) (noting that testatrix "had very little contact with other individuals [and] became dependent upon [proponent]'s assistance in her everyday life."). However, our Court has stated:

A parent-child relationship does not establish the existence of a confidential relationship nor does the fact that the proponent has a power of attorney where the decedent wanted the proponent to act as attorney-in-fact.

---

4. Dr. McEvoy examined Albena in December, 1997, but Appellant alleges that Shirley first exercised undue influence on March 7, 1998. Furthermore, Albena did not execute the irrevocable trust and pour over will, the testamentary dispositions which Appellant now challenges, until May 8, 1998.

\* \* \*

The law is that the existence of a power of attorney will not raise the inference of a confidential relationship where the decedent sought that aid with his business affairs.

\* \* \*

A confidential relationship exists only where there is over-mastering influence on the part of the proponents.

*Angle, supra* at 123, 124, 125 (citations omitted).

¶ 20 Appellant's claim that Shirley provided for Albena's daily needs is belied by the fact that Appellant himself paid Rose, a trained nurse's aide, to perform daily tasks such as keeping Albena's home clean, ensuring that she ate regularly, and accompanying her to the store. Shirley, on the other hand, lived over an hour away and visited Albena only once every two weeks, although she did take Albena grocery-shopping during these visits. The trial court did not abuse its discretion by finding that the record was otherwise "devoid of any facts on which [it] could conclude that a confidential relationship existed," (Trial Ct. Op. at 12) and correctly described the relationship between Shirley and Albena as nothing more than "a loving and caring relationship between a niece and her aunt." (*Id.*). There is ample support for this finding in the trial record.

¶ 21 Appellant's argument that the trial court misapplied the law concerns the weight accorded to the power of attorney Albena granted to Shirley on March 9, 1998. However, as Appellant concedes in his brief, assigning power of attorney does not in and of itself give rise to a confidential relationship. (*See* Appellant's Brief at 29) (calling power of attorney "merely one possible manifestation of such a relationship . . . ."). Albena met privately with Attorney Kline on March 9, 1998 to inform him that she wanted to make Shirley her attorney-in-fact because of her disappointment with Appellant's performance in that position. Attorney Kline's was the second legal opinion Albena had considered in a period of three months with regard to these matters. Furthermore, Appellant himself agreed on March 25, 1998 that Shirley should serve as Albena's attorney-in-fact. Albena solicited advice on these decisions from multiple parties. *Compare with Lakatosh, supra* (holding that power of attorney established confidential relationship where testatrix had little contact with anyone other than will proponent). Since there was no overmastering influence on Shirley's part, the trial court was not legally bound to infer that a power of attorney gave rise to the existence of a confidential relationship. *See Angle, supra.*

¶ 22 In arguing that there was a confidential relationship, Appellant relies on the trial court's finding that Shirley derived a substantial benefit from the March 1998 will. "Substantial benefit" has not been specifically defined by Pennsylvania courts, and whether one receives a substantial benefit is determined on a case-by-case basis. *In re Estate of LeVin,* 419 Pa.Super. 89, 615 A.2d 38, 41–42 (1992), *appeal denied,* 534 Pa. 639, 626 A.2d 1158 (1993) (citing *In re Adams' Estate,* 220 Pa. 531, 69 A. 989, 990 (1908)). In the August 1997 will, Shirley stood to receive 40% of Albena's estate. Under the March 1998 will, which Appellant claims is the product of Shirley's undue influence, Shirley receives 61.5% of the estate. We note that the trial court found this sizable increase in Shirley's bequest established that she substantially benefits under the contested will. However, the trial court correctly concluded that since Appellant failed to prove the other elements of undue influence, he failed to establish a *prima facie* case and his petition should be dismissed. *See LeVin, supra.*

¶ 23 Appellant next contends that Shirley failed to carry her burden of disproving that she exercised undue influence as she offered no explanation of her role in Albena's decision to remove Appellant from her will. Appellant contends that we should therefore direct the entry of judgment in his favor, declare void the contested will of March 9, 1998, and reinstate the letters testamentary executed on August 21, 1997. Because Appellant failed to establish two elements of a *prima facie* case of undue influence, it was unnecessary for Shirley to disprove undue influence at trial.

¶ 24 Based upon the foregoing, we conclude that the Orphans' Court order ending probate proceedings and disposing of all parties and claims is appealable under Rule 341(b). We further hold that the Orphans' Court did not abuse its discretion or err as a matter of law by finding that the will was not the product of undue influence.

¶ 25 Order affirmed.