J-A32011-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ESTATE OF SHEILA CURRY SAYER A/K/A SHEILA C. SAYER, AND SHEILA SAYER, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| APPEAL OF MICHAEL CURRY BLOOM, IN HIS OWN RIGHT, AND HANNAH CURRY WITTMAN AND MALLORY CLAY WITTMAN, BY THEIR NATURAL PARENT AND GUARDIAN, SUZANNE BLOOM WITTMAN AND SUZANNE BLOOM WITTMAN, IN HER OWN RIGHT | |
| Appellants | No. 3160 EDA 2013 |

Appeal from the Decree November 12, 2013
In the Court of Common Pleas of Delaware County
Orphans' Court at No(s): 89-2012

BEFORE:  PANELLA, J., OLSON, J., and FITZGERALD, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED APRIL 13, 2015**

The children and grandchildren of Decedent Sheila Sayer (Testator) appeal the decree entered by the Delaware County Court of Common Pleas, Orphan's Court division, granting summary judgment to Elizabeth Hazel Murphy Campbell, the sole beneficiary under Testator's will, and Joseph Siedlarz, Esq., the scrivener and executor of the will (collectively Appellees).

_____

[*] Former Justice specially assigned to the Superior Court.

The relevant facts and procedural history are as follows. Mr. Siedlarz, as Testator's estate attorney, prepared several wills over the years for Testator, including the will executed on August 18, 2011, which is at issue here. The August 18, 2011 will contains the following sentence: "I make no provisions in this will for my children and grandchildren, not because of any lack of affection for them, but because they are already well provided for." Last Will and Testament of Sheila C. Sayer, dated August 18, 2011, at 2, Reproduced Record ("R.R.") at 705a. In addition, the August 18, 2011 will appointed Mr. Siedlarz as the sole executor, as opposed to his prior designation as co-executor, of the estate. Ms. Campbell, Testator's close friend for over 20 years, is the sole beneficiary. The execution of the August 18, 2011 will was witnessed by Mr. Siedlarz and Kathyrn Razzi.[1]

Testator died on September 28, 2011. On November 9, 2011, the August 18, 2011 will was admitted to probate as the last will and testament of Testator. On December 5, 2011, Testator's children, Appellants Michael C. Bloom and Suzanne Wittman, filed a formal caveat and request for certification objecting to the admission of the August 18, 2011 will and requesting that no letters testamentary or letters of administration be issued. The Register of Wills held a hearing on November 9, 2011, after

---

[1] The August 18, 2011 will has the same distribution scheme as Testator's prior will, which was executed on November 13, 2010. Under both wills, Ms. Campbell is named as the sole beneficiary of the estate. The estate at issue is worth approximately $700,000.

which it dismissed the caveat, admitted the August 18, 2011 will to probate, and granted Letters Testamentary to Mr. Seidlarz.

On July 2, 2012, Appellants filed a petition for citation sur appeal, which was later amended, alleging that Testator lacked testamentary capacity when she executed the August 18, 2011 will and, alternatively, that the will was the product of fraud, forgery, and undue influence. Ms. Campbell filed preliminary objections, which were overruled on November 20, 2012. Appellants then filed a motion for judgment on the pleadings seeking to vacate the probate of the will, again alleging fraud, forgery, and undue influence. In May 2013, the court denied the motion; set a discovery schedule, which was amended on June 27, 2013, ordering that discovery be completed by July 31, 2013; and scheduled trial for October 2013.

On August 19, 2013, Appellants filed a "Petition for Sanctions Under Pa.R.C.P. 4019(c)(1); to Complete Answers to Interrogatories and Document Request; to Compel Respondent Joseph Siedlarz, III to Submit to Deposition; and for Amendment of the Scheduling Order." On September 4, 2013, Ms. Campbell filed a motion for summary judgment joined by Mr. Siedlarz. On September 16, 2013, after a hearing on the motion for sanctions and to compel discovery, the trial court entered a decree ordering Mr. Siedlarz to present himself for deposition on Monday, October 7, 2013. On October 3, 2013, Appellants filed an answer to the motion for summary judgment. Oral arguments were held on October 16, 2013, and the trial

court granted the summary judgment motion by order entered November 12, 2013. Appellants filed a timely appeal to this Court.[2]

Our review of a grant of a motion for summary judgment is well-settled. An appellate court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof ... establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Murphy v. Duquesne University of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (citations and quotation marks omitted).

The proponent of the will has the burden to present evidence of the formalities of probate. *See In Re Clark's Estate*, 334 A.2d 628, 631 (Pa. 1975). Once those formalities have been proven and the will has been admitted to probate, its validity is presumed and the contestant bears the

---

[2] Appellants have withdrawn Issue "D" as a basis for their appeal. *See* Appellants' Brief at 33.

burden of proving that "the testator lacked mental capacity, or [that] the will was obtained by forgery, fraud, or undue influence, or was the product of an insane delusion." *In Re Estate of Nalaschi*, 90 A.3d 8, 11-12 (Pa. Super. 2014) (citation omitted).

Appellants first argue that the Register of Wills violated 20 Pa.C.S.A. § 3132 by admitting the August 18, 2011 will to probate because, allegedly, only one of the two subscribing witnesses appeared before the Register of Wills at the probate hearing.[3]  This issue is waived.  Appellants did not raise this issue before the Register of Wills or before the trial court in their petition for citation sur appeal.  Moreover, Appellants did not raise this issue in any of the over four hearings on various issues that were held prior to the entry of the trial court's order granting summary judgment.  Contrary to the statement in their docketing statement filed with this Court, that their issues were preserved by "pre-trial motion," there is no pre-trial motion in the certified record raising an issue regarding the Register of Wills' compliance with § 3132.  In fact, this is the first time they have raised this issue. Because it was not raised below, the issue is waived.  *See* Pa.R.A.P. 302(a)

_____

[3] Section 3132, entitled "Manner of probate," provides in relevant part that "[a]ll wills shall be proved by the oaths or affirmations of two competent witnesses."

("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").[4]

Although not stated in their question presented, Appellants also argue as a sub-issue of this first issue that the will should not have been admitted to probate and summary judgment should not have been granted because questions of material fact existed regarding (1) Testator's testamentary capacity, and (2) whether the will was the product of undue influence.

> Testamentary capacity exists when a testator is aware of the natural objects of his bounty, the composition of his estate and what he wants done with it, even if his memory is impaired by disease. The testator need not have the ability to conduct business affairs. Courts evaluate testamentary capacity on the date of the execution of the contested will. "Evidence of such state of mind may be received for a reasonable time before and after execution as reflective of decedent's testamentary capacity. This information can be supplied by lay witnesses as well as experts." *In re Agostini's Estate*, 457 A.2d 861, 867 (Pa. Super. 1983).

*In re Estate of Nalaschi*, 90 A.3d at 12-13 (some internal citations and quotations marks omitted).

In the instant case, the trial court observed:

---

[4] We note that the certified record contains no transcript of the proceedings that occurred before the Register of Wills prior to the admission of the will to probate on November 9, 2011. On December 20, 2011, at the hearing held on Appellants' Caveat, the Register of Wills stated that the will "appears to be duly executed." Notes of Testimony, 12/20/11, at 40. Appellants did not object at that time, and made no attempt at any other time to rebut the presumption, created after the will was admitted to probate, that the will was executed with adherence to proper execution procedures. *See In re Estate of Nalaschi*.

[P]roper execution of the August 18, 2011 will ha[d] been proven so there is a presumption of testamentary capacity. The Petitioners have failed to produce any evidence that the Testator lacked testamentary capacity. The facts of this case suggest just the opposite. The Testator was a strong-willed, independent woman [who] lived alone, managed her own affairs, held a job and called her bank nearly daily to check her statements. That does not suggest a woman who does not know the objects of her bounty and what she wants done with them.

Trial Court Opinion, dated 12/20/13, at 8-9.

Discovery in this case was extensive. Appellants obtained hundreds of pages of medical and bank records, none of which showed that Testator was in any way incapacitated in the days leading up to, or on the date of, her signing of the will. Moreover, Appellants pointed to no evidence which suggested that Testator did not have an understanding of her "bounty." Appellants Wittman and Bloom each testified as to their mother's independent and stubborn nature; and, in fact, Wittman testified that Testator called the bank nearly every day regarding the balances of her accounts. Although Appellants attempt to support their contention of incapacity with their own testimony about Testator's status as a recovering alcoholic, they did not present any evidence that on the day the will was executed, Testator was anything other than sober and fully aware of the substance of her estate. In fact, the evidence showed that Testator had had a full physical examination by Dr. Pamela Nagy on August 18, 2011, the day she executed the will—and Dr. Nagy had noted that Testator appeared to be

healthy. Dr. Nagy expressed no concerns about Testator's mental capacity. Appellants produced no evidence that met their burden of proving testamentary incapacity. Accordingly, we conclude that the trial court did not abuse its discretion or err as a matter of law in concluding that there was no genuine issue of material fact regarding Testator's testamentary capacity.

In arguing that the will was the product of undue influence, Appellants conclude that "both Siedlarz and Campbell had confidential relationships with Decedent, [Testator's] psychological, physical and alcoholism combined with prescription abuse [*sic*] weakened her intellect relative to the intellects of Appellees', and the interest each Appellee had in the estate could be established on the record in this case." Appellants' Brief at 24. Appellants also allege that Mr. Siedlarz would directly benefit from the execution of the will naming Ms. Campbell as beneficiary because he was to receive a referral fee from a lawyer representing Ms. Campbell in an unrelated case.

The contestants of a will bear the burden of proving undue influence with clear and convincing evidence that "(1) the testator suffered from a weakened intellect at the time the will was executed; (2) there was a person in a confidential relationship with the testator; and (3) the person in the confidential relationship received a substantial benefit under the challenged will." **In re Estate of Nalaschi**, 90 A.3d at 14 (citation omitted). Once each of these three elements are established by the contestant, the burden

shifts back to the proponent to prove the absence of undue influence by clear and convincing evidence. ***See In re Bosley***, 26 A.3d 1104, 1108 (Pa. Super. 2011). The burden of clear and convincing evidence means that "mere suspicions, opinions or beliefs not founded on established facts are insufficient to support" a charge of undue influence. ***In re Paul's Estate***, 180 A.2d 254, 257 (Pa. 1962) (citations omitted).

A confidential relationship exists "when the circumstances *make it certain* that the parties do not deal on equal terms, with one side exercising an over-mastering influence over the other[.]" ***In re King's Estate,*** 87 A.2d 469, 472 (Pa. 1952) (citations omitted). With respect to "weakened intellect," this Court has observed:

> Although our cases have not established a bright-line test by which weakened intellect can be identified to a legal certainty, they have recognized that it is typically accompanied by persistent confusion, forgetfulness and disorientation. In a case of undue influence, a trial court has greater latitude to consider medical testimony describing a decedent's condition at a time remote from the date that the contested will was executed. However, if the court's decision rests upon legally competent and sufficient evidence, we will not revisit its conclusions. Our review of the court's factual findings is limited to considering whether those findings have support in the record.

***In re Estate of Fritts***, 906 A.2d 601, 607 (Pa.Super. 2006) (internal citations and quotation marks omitted).

In the instant case, the trial court stated:

Elizabeth Hazel Murphy Campbell was a close friend of the Testator for approximately twenty years after having met her at Alcoholics Anonymous.[5] Some of the estate documents which Mr. Siedlarz prepared for the Testator mention Ms. Campbell. Mr. Siedlarz prepared a document which indicated that the Testator considered naming Ms. Campbell her general power of attorney but it was never delivered. The Testator also executed a subsequent power of attorney which did not name Ms. Campbell and revoked all prior power of attorneys. Mr. Siedlarz also prepared a document which gave Ms. Campbell medical power of attorney. However, that too was not delivered. Mr. Siedlarz also referred Ms. Campbell to Stephen Carroll, Esquire, to represent her in a legal matter in Montgomery County for which Mr. Siedlarz was to receive a referral fee.

Occasionally, the Testator would have Ms. Campbell sign her checks because she was no longer able due to tremors in her hand (Tr. S. Wittman 48:14-17; Exhibit D to Motion for Summary Judgment). However, Petitioner Suzanne Wittman explained that Ms. Campbell signed the checks at the direction of the Testator (Id. 49:11-13). Ms. Wittman also testified that the Testator called her bank every day to check her balance and that the Decedent was very independent that way. (Id. 52: 12-16).

As a close friend, Ms. Campbell occasionally took the Testator to the hospital and to rehab. (Id. 46: 14-47: 4). The Testator struggled with alcohol addiction but, nevertheless, was an independent woman who managed her own household, finances, and health and safety. In fact, Petitioner Wittman testified that the Testator was very independent, headstrong and stubborn. (Id. 16: 2-9; 52: 12-16). [Testator] also volunteered to help others who struggled with alcohol abuse and worked at a local thrift store where she dealt with the public on a daily basis.

The Testator did not have much of a relationship with her children or grandchildren. Petitioner Wittman wrote in an email that the Testator had no relationship with her grandchildren, Ms. Wittman's daughters. (Email Chain; Exhibit 1 to Answer to Motion for Summary Judgment). Ms. Wittman also wrote that the Testator could do more for her children and grandchildren

---

[5] Testator was Ms. Campbell's sponsor at AA.

but does not and that the Testator has completely cut herself off from Ms. Wittman. (Id.). In addition, Ms. Wittman testified that she did not expect the Testator to leave anything to Michael Bloom, the Co-Petitioner. (Tr. S. Wittman 21:22-22:3).

The Testator was prescribed several different medications and her cause of death was multiple drug intoxication. (Medical Examiner Report; Exhibit A to the Amended Petition). Dr. Steven Weinstein, a board certified psychiatrist and neurologist, testified that, even in combination and taken at a higher than recommended dosage, those medications would not detrimentally effect the Testator's mental functioning. (Tr. Steven Weinstein, M.D. 13: 21-14: 22; 36: 1-11).

Trial Court Opinion, dated 12/20/13, at 2-3.

Although the trial court recognized that Ms. Campbell was to receive the bulk of the estate, it concluded:

[Appellants] have produced no evidence that either Mr. Siedlarz or Ms. Campbell was in a confidential relationship with the Testator. The strongest evidence that [Appellants] produced to support this element are the power of attorneys and drafts of power of attorneys drawn up by Mr. Siedlarz at the direction of the Testator. Mr. Siedlarz prepared a document which indicated that the Testator considered naming Ms. Campbell her general power of attorney but *it was never delivered*. The Testator also executed a subsequent power of attorney which did not name Ms. Campbell and revoked all prior power of attorneys. Mr. Siedlarz also prepared a document which gave Ms. Campbell medical power of attorney. However, *that too was not delivered. Ms. Campbell was never given these power of attorneys [sic] and [Appellants] have produced no evidence that she even knew of their existence.* Therefore, these documents cannot be considered a clear indication of a confidential relationship.

While the facts of this case demonstrate that the Testator and Ms. Campbell were close friends for about 20 years, friendship alone is insufficient to create a confidential relationship. The facts demonstrate that Ms. Campbell occasionally signed the Testator's checks for her later in life due to a hand tremor, that she lived with her for a short time after the Testator came home from the hospital, and that she would take her to rehab and

doctors' appointments. … [T]he facts here show that the Testator's mind was clear. The Testator was consistently described as an independent woman who managed her own affairs. She also maintained a job at a local thrift store until shortly before she died where she dealt with the public on a daily basis. In addition, the facts show that the Testator was independent, headstrong and stubborn. Someone with those characteristics is unlikely to be subject to an over-mastering influence by another and the [Appellants] have failed to produce facts which would suggest otherwise. Therefore, [Appellants] have failed to produce any evidence that there was a confidential relationship between the Testator and Ms. Campbell.

As for Mr. Siedlarz, there are no facts to support the allegation that he exerted an over-mastering influence on the Testator. As the case law above states, the [Appellants] cannot sustain their burden by offering mere suspicions that are not founded on established facts. If anything, the facts show a standard attorney[-]client relationship where Mr. Siedlarz altered estate documents according to the Testator's directions and sought clarification and advice when something was ambiguous. Therefore, [Appellants] have failed to produce any facts to support the element of a confidential relationship between the Testator and Mr. Siedlarz.

*Id*., at 6-7 (emphasis added).

Our review indicates that the trial court's factual findings and legal conclusions are fully supported by the record and case law. Accordingly, we conclude that the trial court did not err in granting summary judgment to Appellees.

Appellants next aver that the trial court should have dismissed the probate of the will because Appellee Siedlarz had "unclean hands." Appellants' Brief at 25. In support, they cite to Mr. Siedlarz's referral of Ms. Campbell to another law firm on an unrelated matter for which he would receive a referral fee. Appellants then reiterate their unsubstantiated

argument about the failure of the second witness to testify before the Register of Wills, and provide a reframed variation of their argument that Mr. Siedlarz exerted undue influence over Testator. *See* Appellants' Brief at 26–27.

Appellants did not raise the doctrine of "unclean hands" below, and this issue is thus waived. *See* Pa.R.A.P. 302(a). Moreover, even if we had addressed it on the merits we would have found that it is without merit.

Under the doctrine of unclean hands, a

court may deprive a party of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue. The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy in issue.

*Terraciano v. Department of Transportation, Bureau of Driver Licensing*, 753 A.2d 233, 237–38 (Pa. 2000) (citations omitted).

In the instant case, Mr. Siedlarz is not a beneficiary under the will; he is merely the executor. Moreover, there is no record evidence to support Appellants' claims that Mr. Siedlarz will directly or indirectly benefit from Ms. Campbell being named the beneficiary of the will. In response to Appellants' argument of fraud below, the trial court stated:

[Appellants] alleged that Mr. Siedlarz and Ms. Campbell misrepresented to the Testator that her children and grandchildren were well provided for with the intention of causing the Testator to leave her estate to Ms. Campbell. However, [Appellants] have failed in their response to the motion for summary judgment to put forth any material facts after extensive discovery to support their allegations. Instead, [Appellant] Bloom testified that he was unaware of any

- 13 -

documents that reflect upon fraud practiced by either Ms. Campbell or Mr. Siedlarz and [Appellant] Wittman testified that she did not think that there was any sort of conspiracy between Ms. Campbell and Mr. Siedlarz. Those two statements support the fact that there was no misrepresentation to the Testator that the children and grandchildren were well-provided for. In addition, the facts demonstrate that the Testator was an independent woman who managed her own affairs[.]

Trial Court Opinion, dated 12/20/13, at 4-5.

Our independent review of the record indicates that there is no evidence that Mr. Siedlarz acted unfairly, fraudulently, or deceitfully in this matter. Appellants' contention of unclean hands is, thus, without merit. Accordingly, even if this issue were not waived, we would not grant relief.

Lastly, Appellants aver that the trial court erred or abused its discretion when it denied their request for sanctions under Pa.R.C.P. 4019(c)(1) on September 16, 2013. In support, Appellants provide a nearly incoherent argument averring that Appellees obstructed their efforts to obtain discovery, before concluding that they were prevented from responding to the summary judgment motion.

Contrary to their contention, Appellants *did* respond to the summary judgment motion by filing a response to the motion for summary judgment and a "Brief in Support of Response" to the motion for summary judgment. In addition, Appellants' counsel provided a vigorous argument against summary judgment during the hearing held on October 16, 2013.

In their brief, Appellants do not indicate exactly what sanction they were seeking or allege exactly how the trial court erred. They do not cite to

- 14 -

the transcript of the September 16, 2013 hearing that actually occurred on their motion for sanctions. Moreover, Appellants do not discuss Rule 4019(c)(1) or provide citation to relevant case law or other authority pertaining to discovery sanctions. They have essentially failed to comport with the requirements of Pa.R.A.P. 2119. Because Appellants have not provided a coherent, developed argument supported by relevant authority, we conclude that this issue is waived. *See*, *e.g.*, ***Coulter v. Ramsden***, 94 A.3d 1080, 1088-89 (Pa. Super. 2014), ***appeal denied***, 403 WAL 2014 (Pa. filed Dec. 10, 2014) (observing that Pa.R.A.P. 2119 requires that argument be developed for each issue raised with citation to authority in support of each contention, and appellate arguments which fail to adhere to Rule 2119 may be considered waived).

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2015

- 15 -