J-A07015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  ESTATE OF JEAN F. RICHARDS, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  BARBARA A. MOZICK AND ANTHONY J. MOZICK | No. 1169 WDA 2014 |

Appeal from the Order June 25, 2014
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): 1507 of 2013

BEFORE:  BENDER, P.J.E., LAZARUS, J. and MUNDY, J.

DISSENTING MEMORANDUM BY BENDER, P.J.E.:**FILED September 1, 2015**

I respectfully dissent because I disagree with the Majority that the orphans' court erred in finding that Daughter presented *prima facie* evidence of undue influence.  The Majority's decision here centers on the second prong of the three-pronged test set forth in **In re Estate of Clark**, 334 A.2d 628 (Pa. 1975),[1] concluding that Daughter failed to establish that Decedent

_____

[1] The applicable burden of proof in a case in which the contestant of a will asserts the existence of undue influence is as follows:

> "The resolution of a question as to the existence of undue influence is inextricably linked to the assignment of the burden of proof."  **In re Estate of Clark**, 334 A.2d 628, 632 (Pa. 1975).  Once the proponent of the will in question establishes the proper execution of the will, a presumption of lack of undue influence arises; thereafter, the risk of non-persuasion and the burden of coming forward with evidence of undue influence shift to the contestant.  **Id.**  The contestant must then establish, by clear and convincing evidence, a prima facie showing of undue influence by demonstrating that:  (1) the testator suffered from

*(Footnote Continued Next Page)*

was in a confidential relationship with Mrs. Mozick, the proponent of the will.

Mrs. Mozick acknowledges that as the proponent of the will she will receive a

substantial benefit from the will (prong 3), and the Majority concludes that

the "weakened intellect" prong (prong 1) was proven by sufficient evidence,

namely, by way of Dr. Nicotero's deposition testimony.  **See** Majority, at 10

n.2.[2]

With regard to prong 2, the orphans' court discussed the following

pertinent facts derived from the testimony, and upon which it concluded that

a confidential relationship existed between Decedent and Mrs. Mozick.  The

_(Footnote Continued)_ _____

> a weakened intellect; **(2) the testator was in a confidential relationship with the proponent of the will;** and (3) the proponent receives a substantial benefit from the will in question.  **Id**.  Once the contestant has established each prong of this tripartite test, the burden shifts again to the proponent to produce clear and convincing evidence which affirmatively demonstrates the absence of undue influence.  **Id.**

**In re Estate of Smaling**, 80 A.3d 485, 493 (Pa. Super. 2013) (_en banc_) footnote omitted) (emphasis added).

[2] Specifically relating to the "weakened intellect" prong, the orphans' court explained:

> [T]he medical records reveal, as does the deposition testimony of Dr. Nicotero, that [D]ecedent had bouts of confusion and forgetfulness, coupled with hallucinations.  Indeed, Dr. Nicotero testified, and [D]ecedent's medical records indicate, that [D]ecedent suffered from an inferior mind [(prong 1)].  Thus, the requirement of weakened intellect has been satisfied, and [Daughter] has provided sufficient evidence of all three necessary elements to a claim of undue influence.

Orphans' Court Opinion (OCO), 9/26/14, at 6 (unnumbered).

court found that Mrs. Mozick was given a power of attorney over the Decedent's finances, but it recognized that she never exercised that authority. However, the court found "unpersuasive the notion that simply because [Mrs.] Mozick did not exercise her authority under the power of attorney, no confidential relationship ensued." OCO, at 4 (citation to notes of testimony (N.T.) omitted). The court also found that Mrs. Mozick spent "a copious amount of time by [D]ecedent's side in the weeks leading up to her death." *Id.* (citation to N.T. omitted). The court further found that Mrs. Mozick

> was at the hospital so often, and was so involved in [D]ecedent's care, that the doctors recognized her as the person to whom they should communicate regarding [D]ecedent's condition and care. [She] effectively oversaw who [D]ecedent visited with and spoke to while hospitalized. Furthermore, [Mrs.] Mozick procured the attorney who drafted [D]ecedent's February 19th will.

*Id.* (citation to N.T. omitted).

As for the procurement of Attorney Costa, the testimony revealed that Mr. Weaver told Decedent about Attorney Costa and that he called Attorney Costa, indicating that Decedent would be calling to set up a meeting. However, Decedent did not call Attorney Costa; rather, Mrs. Mozick was the one who called Attorney Costa, asking him to come to the hospital to see Decedent in connection with her writing a new will, which in fact occurred at

the visit on February 19, 2013.[3]   Based upon the totality of the circumstances and its recognition that "in a will contest, the assessment of secrecy of the relationships, not unlike the evaluation of credibility of the witnesses, must be a factor which is properly within the sole discretion of the trier of fact[,]" the court found that a confidential relationship existed.  **See** OCO, at 4 (citing **In re Estate of Clark**, 334 A.2d at 635).

My disagreement with the Majority's position rests on its reversal of the orphans' court's decision due to its own fact finding rather than relying on the orphans' court's determinations regarding credibility.  "[O]n review, we will not reverse [the lower court's] credibility determinations absent an abuse of discretion."  **In re Estate of Fritts**, 906 A.2d 601, 606 (Pa. Super. 2006) (citation omitted).  Moreover, '[i]f the court's findings are properly supported, we may reverse its decision only if the rules of law on which it relied are palpably wrong or clearly inapplicable."  **Id.** (citation omitted). The **Fritts** decision further states:

_____

[3] Specifically, Attorney Costa testified that Decedent told him that she did not want to leave anything to Daughter because Daughter had an alcohol abuse problem, and that Daughter was not in her life and only visited when she needed money.  Attorney Costa also testified that he suggested a "special needs trust where she could put some of her estate in the trust for the benefit of her daughter but her daughter would not have any access to it."  N.T., at 58.  Attorney Costa further indicated that Decedent seemed open to the idea and that she would consider it.  However, the next morning he received a call that Decedent "was in a coma and a little later she had passed."  **Id.**

> In a case of undue influence, a trial court has greater latitude to consider medical testimony describing a decedent's condition at a time remote from the date that the contested will was executed. **Clark, supra** at 634. However, "[i]f the court's decision rests upon legally competent and sufficient evidence, we will not revisit its conclusions." **Owens [v. Mazzei**, 847 A.2d 700,] 707 [(Pa. Super. 2004)] (citing **Clark, supra** at 635). "[O]ur review of the court's factual findings is limited to considering whether those findings have support in the record ...." **In re Estate of Geniviva**, 450 Pa. Super. 54, 675 A.2d 306, 310 (Pa. Super. 1996), *appeal denied*, 546 Pa. 666, 685 A.2d 545 (Pa. 1996).

**Id.** at 607.

The Mozicks' arguments all center on the court's credibility determinations and in reversing the orphans' court's decision here, it is evident that the Majority substituted its credibility determination for that of the orphans' court. For that reason, I am compelled to dissent.