J-S24012-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JANE TIMPANO AND KATHRYN MAZZANTI, AS SUCCESSORS ACTING IN THEIR CAPACITY AS CO-EXECUTRIXES OF THE ESTATE OF JAMES C. SCHRY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DUANE LEE BOTELHO | |
| Appellant | No. 834 WDA 2016 |

Appeal from the Judgment Entered April 27, 2016
In the Court of Common Pleas of Venango County
Civil Division at No(s): Civ No 1115-2013

BEFORE:  PANELLA, J., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, J.                    **FILED MAY 05, 2017**

Appellant, Duane Botelho, helped James C. Schry maintain Schry's farm in Venango County for many years. In 2011, Botelho, Schry, and a third man, Kevin Mazzanti, entered into an oral agreement to plant and harvest corn at Schry's property for profit. The essential contours of the agreement had Schry, then approximately 88 years-old, supplying the land and other capital for the endeavor, while Botelho, then approximately 46 years-old, was to provide knowledge and experience from operating a farm. Schry incurred substantial debt to finance the project and ultimately

_____

[*] Former Justice specially assigned to the Superior Court.

terminated the project by filing an action in replevin against Botelho.[1] He later filed an amended complaint, asserting that Botelho had abused a confidential relationship by "persuad[ing] and/or forc[ing]" him to make cash transactions that inured solely to Botelho's benefit.

After a bench trial, the court found that Botelho had exercised undue influence over Schry's decision-making during the project and assessed damages and provided other relief to Schry's estate. On appeal, Botelho argues that the trial court erred in concluding that Schry's estate had established that he suffered from a weakened intellect during the project. Furthermore, he challenges two aspects of the damages awarded by the trial court. After careful review, we conclude that none of Botelho's claims merit relief on appeal, and therefore affirm.

We review a verdict following a non-jury trial as follows.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue . . . concerns a question of law, our scope of review is plenary.

_____

[1] Schry passed away during the pendency of the action, and his estate was duly substituted as plaintiff.

***Stephan v. Waldron Elec. Heating and Cooling, LLC***, 100 A.3d 660, 664-665 (Pa. Super. 2014) (citation and brackets omitted). Further, the fact-finder is free to accept or reject the testimony of both expert and lay witnesses, and to believe all, part or none of the evidence. ***See Terwilliger v. Kitchen***, 781 A.2d 1201, 1210 (Pa. Super. 2001).

Here, the trial court found that Botelho had wielded undue influence over Schry during the project and utilized that influence to benefit himself at the expense of Schry's interests. Often, the concept of undue influence is addressed in cases arising from a will contest. However, the standards by which a claim of undue influence is measured are the same for *inter vivos* gifts. ***See Withers v. Withers***, 70 A.2d 331, 332 (Pa. 1950).

To establish undue influence, a plaintiff must establish three elements by clear and convincing evidence. ***See In re Estate of Ziel***, 359 A.2d 728, 734 (Pa. 1976). First, a plaintiff must establish the existence of a confidential relationship between the plaintiff and the defendant. ***See In re Estate of Fritts***, 906 A.2d 601, 607 (Pa. Super. 2006). In addition to the confidential relationship, a plaintiff must establish that the defendant received a substantial benefit pursuant to the confidential relationship. ***See id***. Finally, the plaintiff has the burden of establishing that the plaintiff had a weakened intellect at the time of the transfer. ***See id***.

If a plaintiff meets these burdens, the burden shifts to the defendant to establish the absence of undue influence. ***See In re Bosley***, 26 A.3d

1104, 1108 (Pa. Super. 2011). The defendant must meet this burden by clear and convincing evidence. *See id*.

Botelho challenges the trial court's finding only on the final element, that Schry was suffering from a weakened mental state at the relevant time. There is no bright line test for determining whether a plaintiff was suffering from a weakened mental state. *See id*. "The weakened mental condition which must be shown does not rise to the level of testamentary incapacity." *Estate of Ziel*, 359 A.2d at 734 (citation omitted). Instead, we have recognized that it can be established by a showing of "persistent confusion, forgetfulness and disorientation." *Estate of Fritts*, 906 A.2d at 607. Other indications include findings that the plaintiff was not oriented towards reality and had been found living in filth, *see Estate of Lakatosh*, 656 A.2d 1378, 1385 (Pa. Super. 1995), and where there was conflicting expert opinions on whether the plaintiff had suffered from Alzheimer's disease, *see Burns v. Kabboul*, 595 A.2d 1153, 1163 (Pa. Super. 1991).

Botelho argues that the estate did not establish that Schry was suffering from a weakened mental state. He concedes that "[a]t the relevant time, [Schry] had mild cognitive impairment and perhaps early vascular dementia." Appellant's Brief, at 14. However, he contends that these circumstances do not rise to the legal level of a weakened mental state, as several witnesses testified that Schry was capable of making rational decisions.

In making its findings, the trial court relied upon the testimony of psychiatrist Robert Wettstein, M.D. Dr. Wettstein testified that a magnetic resonance imaging ("MRI") scan of Schry's brain from 2009 revealed atrophy, decreased blood flow, and damage resulting from strokes. *See* N.T., 9/14/15, at 144. A second MRI scan from 2010 was requested by Schry's doctors because he was suffering from confusion. *See id*., at 145. There was no significant change in the scan from the 2009 scan. *See id*.

A computerized tomography ("CT") scan was taken of Schry's brain in 2011 after he had fallen out of his bed and exhibited "a change in mental state." *Id*., at 146. The discharge summary for this scan indicated that Schry was suffering from confusion and had increased forgetfulness. *See id*., at 148. The results of this scan were consistent with the previous MRI scans. Two more MRI scans in 2013 were also consistent with the previous scans. *See id*., at 146-147.

Dr. Wettstein also testified that Schry had a longstanding personality trait of being "a gullible kind of guy who was easily impressionable and persuadable to do things that other people wanted him to do." *Id*., at 147. He opined that when patients suffer from dementia, their pre-existing personality traits are intensified. *See id*.

Botelho argues that Dr. Wettstein's personal examination of Schry, in 2014, was too far removed from the relevant time period to be useful. However, the trial court concluded that Dr. Wettstein's testimony regarding

Schry's medical history was sufficient to establish, clearly and convincingly, that Schry was suffering from a weakened intellect during the farming project. This finding is well supported by the record, and it does not in any way constitute an abuse of the trial court's wide discretion sitting as a finder of fact. We therefore conclude that Botelho's first argument on appeal merits no relief.

Next Botelho argues that the trial court erred in awarding money damages to the estate in an amount equivalent to debts incurred by Schry in pursuing the farming project. Botelho contends that Schry did not request this relief in his complaint. And even if he had, Botelho argues that an award of money damages on top of an order requiring Botelho to surrender the equipment purchased with the proceeds from these debts results in a double recovery for the estate.

In addressing the first part of Botehlo's argument, we note that, in contravention of Pa.R.A.P. 2119(e), Botelho does not identify where he raised the issue of the relief requested varying from the relief ordered by the trial court. A review Botelho's post-trial motion reveals that he did not assert this basis, but rather focused on whether the award of the value of the debts was fair in light of the required return of the equipment purchased. **See** Post-Trial Motion, filed 4/29/16, at ¶¶ 5-7. This argument is therefore waived for purposes of this appeal. **See** Pa.R.A.P. 302(a).

Turning to Botelho's preserved argument on this issue, Botelho argues that the award of possession of the equipment in addition to the monetary damages equivalent to the amount of the debts incurred by Schry was unfair. The trial court found that under the agreement between the parties, Botelho was responsible for management and bookkeeping for the farming project. Botelho has not challenged this finding. Furthermore, the trial court found that Botelho's "inability to recall which funds were used to purchase which items stems from his concerted inattentiveness to spending Schry's assets wisely." This finding is well-supported by the record.

As noted above, the trial court reasonably found that Botehlo had a confidential relationship with Schry. The standard of care imposed by *de facto* confidential relationships is equivalent to the standard of care imposed by *de jure* fiduciary relationships. **See Brooks v. Conston**, 51 A.2d 684, 688 (Pa. 1947) (defining confidential relation as a relationship "wherein one of the parties is bound to act with the utmost good faith for the benefit of the other party and can take no advantage to himself …"). Since the trial court found that Botelho had abused his confidential relationship with Schry, it was appropriate for the risk of uncertainty on this issue to be borne by Botelho. **See In re Estate of Aiello**, 993 A.2d 283, 289 (Pa. Super. 2010) (holding that fiduciary who engaged in self-dealing bore the burden of establishing that plaintiff's losses would have occurred in absence of self-

dealing). We therefore conclude that Botelho's second argument on appeal merits no relief.

In his final argument, Botelho contends that the trial court erred in failing to credit his testimony that Schry had given a tractor directly to Botelho's daughter as a gift and was not part of the farming project. The trial court found this testimony incredible. Furthermore, it found that the fact that the tractor was included on a bill of sale that included equipment that was utilized for the farming project was a more credible indication of the tractor's status. As noted in our standard of review, the trial court was entitled to make reasonable credibility determinations, and we will not usurp this discretion on appeal lightly. We cannot conclude that this credibility finding was unreasonable, and thus, Botelho's final issue on appeal merits no relief.

Judgment affirmed. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/5/2017