**In the Matter of Cornelia K. MAMPE, an Incapacitated Person.**

**Appeal of: Quina Nelling.**

Superior Court of Pennsylvania.

Argued July 11, 2007.

Filed Aug. 29, 2007.

equately summarized Appellee's argument at the August 25, 2005 hearing.

955

John F. McKenna, West Chester, for appellant.

Allen H. Tollen, Media, for appellee.

BEFORE: JOYCE,* PANELLA and POPOVICH, JJ.

## OPINION BY POPOVICH, J.:

¶ 1 Appellant Quina Nelling appeals the declaratory judgment entered on January 11, 2007, that declared invalid the May 7, 2002 last will and testament and revocable trust agreement of Cornelia K. Mampe (now deceased), the mother of Appellant, Appellee Louise Patejdl, and Appellee Cirlot Truncellito. Upon review, we affirm.

¶ 2 The relevant facts of this case were stated by the trial court in its opinion, filed September 7, 2006, as follows:

Cornelia K. Mampe was born on June 13, 1925. She was married three times. Mrs. Mampe's first marriage was to Council Parker, with whom she had three daughters: [Appellee] Louise Patejdl (called "Whit" by her family members, but referred herein as "Louise"), [Appellant], and [Appellee] Cirlot Truncellito ("Cirlot"). Mrs. Mampe did not have children with her subsequent husbands. Her last Husband, Ed Mampe, died in 2001.

On October 23, 1992, Mrs. Mampe executed a will. In the will, each of Mrs. Mampe's three daughters received an equal share of her estate. On April 8, 1993, Mrs. Mampe executed a codicil to that will, reducing Cirlot's share of the estate to one-ninth, but adding Cirlot's two children each at a one-ninth share. On April 8, 1993, she also signed a Health Care Directive and Power of Attorney appointing [Appellant] as her "Agent" and Attorney-in-fact.

On May 7, 2002, Mrs. Mampe executed a second will, as well as a Revocable Trust Agreement, Power of Attorney, Instrument of Appointment of Trust Fund, and a Health Care Directive. Together, these documents may be referred to as the "2002 documents." Mrs. Mampe named herself and [Appellant] as Trustees of the Revocable Trust, and she named [Appellant] as her "Agent" under the Power of Attorney. In the 2002 will, Mrs. Mampe bequeathed all of her tangible property to [Appellant], and all the real property and residue of her estate to the Trustee of the Revocable Trust. In the Revocable Trust Agreement, Mrs. Mampe gave 10% of the trust remainder to Louise, with the balance of the trust going to [Appellant]. Mrs. Mampe excluded Cirlot from receiving anything under the 2002 will and trust.

In 2002, Mrs. Mampe transferred (*inter vivos*) over $800,000[.00] to [Appellant], including a $222,000[.00] IRA,

---

* Judge Joyce did not participate in the consideration or decision of this case.

horses, and a $330,000[.00] mortgage on a horse farm in New Jersey (with a 3% interest rate) as well as $137,000[.00] for upkeep of the farm.

Regarding Mrs. Mampe's living situation, the evidence shows that in September 2001, Mrs. Mampe was admitted to Sunrise Assisted Living facility in West Chester, Pennsylvania, after a car accident. Shortly before her admission, Mrs. Mampe had visited her husband Ed in Christiana Hospital, and, while driving home, she caused a car accident and left the scene. She was found in a confused state and was taken by police to the hospital. The hospital would not allow Mrs. Mampe to return to her home, and she was therefore admitted to Sunrise.[FN1]

[FN1] Mrs. Mampe never drove after the accident. In February 2002, her license was revoked.

The Executive Director of Sunrise testified that when Mrs. Mampe was admitted she needed assistance with self-administration of medications and had a slight risk of wandering, however, she continued to do some things for herself. Over time, Mrs. Mampe needed greater supervision and care, and was moved to the dementia unit in 2003. In June of 2003, Mrs. Mampe's behavior became aggressive and agitated. She was not able to stay at Sunrise after she attacked the staff and residents. Mrs. Mampe was transferred to Brandywine Behavioral Center, and later went to live in an apartment with an aide providing 24–hour care.

During the time that Mrs. Mampe was in assisted living and in her apartment, [Appellant] lived near [Mrs. Mampe] and visited her almost every day. Cirlot lived in Unionville, Pennsylvania, and Louise lived on Long Island, New York. [Appellee] Cirlot's and [Appellee] Louise's visits with Mrs. Mampe were not as frequent as [Appellant's] visits. [Appellee] Cirlot also had serious health problems during this time which prevented her from visiting Mrs. Mampe.

At some point in 2004, [Appellees] Cirlot and Louise learned of the terms of the 2002 will and trust. In August of 2004, they filed the instant Declaratory Judgment action, as well as a Petition seeking to have Mrs. Mampe adjudicated an incapacitated person.

[The trial court] held a hearing on the issue of Mrs. Mampe's capacity, and by Decree dated April 4, 2005, [it] found her to be an incapacitated person. With the consent of her sisters, [Appellant] was appointed Guardian of Mrs. Mampe's person and estate.

Sadly, Mrs. Mampe died on October 11, 2005, before any hearings had been held on the Declaratory Judgment petition.

Trial court opinion, 9/7/2006, at 1–4 (citations omitted).

¶ 3 The trial court conducted hearings on the petition for declaratory judgment on October 18, 19, and November 30, 2005. On January 10, 2006, pursuant to the parties' stipulation, the trial court appointed Appellant administratrix *pendente lite* of Mrs. Mampe's estate, with the limited authority to pay the taxes and debts of the Estate and to deposit and collect assets.

¶ 4 By order entered September 7, 2006, the trial court granted Appellees' petition for declaratory judgment and declared the 2002 will and trust invalid. The trial court authored an opinion in support of its order. Appellant filed a timely notice of appeal on October 4, 2006. The following day, Appellant requested reconsideration of the trial court's September 7, 2006 order. On October 6, 2006, the trial court expressly granted reconsideration of its September

7, 2006 order, and Appellant discontinued her notice of appeal. On January 11, 2007, following oral argument and the submission of briefs by the parties, the trial court declared that Mrs. Mampe's 2002 will and trust were the products of undue influence exercised upon her by Appellant and, therefore, were invalid.

¶ 5 Appellant filed a timely notice of appeal to this Court from the trial court's January 11, 2007 judgment. Thereafter, the trial court ordered Appellant to file a concise statement of matters complained of on appeal within 14 days of the date of its order. Appellant complied with the order and filed the statement in a timely fashion. The trial court adopted its September 7, 2006 opinion as its response to the issues presented in Appellant's concise statement.

¶ 6 Appellant presents the following issues for our review:

I. Did the trial court commit an error of law by applying a relaxed standard for undue influence, contrary to controlling authority?

II. Did the trial court err in accepting lay opinions of Mrs. Mampe's weakened intellect based upon anecdotal evidence without any medical expert testimony concerning her mental state?

III. Did the trial court err in finding that [Mrs. Mampe] had a weakened intellect when the scrivener's testimony of the lucidity, understanding, and clear and unequivocal intentions of [Mrs. Mampe] was unrebutted?

IV. Did the trial court err in concluding that [Appellant] had an overmastering influence over [Mrs. Mampe]?

Appellant's brief, at 4.[1]

██ ¶ 7 We begin with the observation that, although this case is, in essence, a contest to the validity of Mrs. Mampe's will, it sounds as a declaratory judgment action. Therefore, we must consider whether a declaratory judgment action, filed properly prior to Mrs. Mampe's death, can be continued following her death as a vehicle to challenge the validity of her will. *See, e.g., Wagner v. Wagner,* 887 A.2d 282, 285 (Pa.Super.2005) (Superior Court may assess its jurisdiction *sua sponte* ). We conclude that both the trial court and this Court may exercise subject matter jurisdiction over this case. We reach this decision because, under the Declaratory Judgment Act, 42 Pa.C.S.A. §§ 7531–7541, the trial court has the ability to declare the legal rights, status, and legal relations of persons interested under a will or trust and to determine any question arising in the administration of a decedent's estate or trust, including questions of construction of wills and other writings. *See* 42 Pa.C.S.A. §§ 7534, 7535(3). However, a will may not be construed under the Declaratory Judgment Act unless there exists an actual controversy indicating imminent and inevitable litigation, coupled with a clear manifestation that the declaration sought will render practical help in ending the dispute. *See In re Cryan's Estate,* 301 Pa. 386, 397, 152 A. 675, 680 (1930). Likewise, a will may not be construed under the Declaratory Judgment Act unless all parties who may be affected are before the trial court. *See In re Straus' Estate,* 307 Pa. 454, 161 A. 547 (1932).

¶ 8 The record reflects that an actual controversy exists because, had this case proceeded to probate in the traditional fashion, Appellees would have presented a challenge to the validity of the 2002 will and trust on the basis of undue influence.

---

1. We have renumbered Appellant's issues.

*Cryan's Estate*, at 397, 152 A. at 680. Secondly, all interested parties were before the trial court. Mrs. Mampe's 2002 will and trust leaves 90% of her estate to Appellant or, if Appellant is deceased, to her husband, with the remaining 10% to pass to Louise. The 2002 will and trust do not provide for the passing of these interests to either Appellant's or Louise's issue. Rather, if the aforementioned individuals were to predecease Mrs. Mampe, their shares were to pass to certain charities appointed by Appellant, Mrs. Mampe's trustee. However, as Mrs. Mampe had died in the midst of this litigation, no rights vested in any of the charities because Appellant, her husband, and Louise were living at the time of her death. Likewise, Cirlot, who was specifically disinherited by Mrs. Mampe's 2002 will and trust was present. Accordingly, this case was properly before the trial court as a declaratory judgment action.

 ¶ 9 Our review of this case is governed as a decree in equity, and, therefore, we will set aside the trial court's factual conclusions only where they are not supported by adequate evidence. *Budtel Assocs., L.P. v. Cont'l Cas. Co.*, 915 A.2d 640, 643 (Pa.Super.2006). However, we exercise plenary review over the trial court's legal conclusions drawn from those facts. *Id.*, 915 A.2d at 643.

 ¶ 10 Appellant argues first that the trial court applied a "relaxed" standard of review for undue influence cases. We disagree. In order to set forth a *prima facie* case for undue influence, one challenging the validity of a will must demonstrate the following: (1) a confidential relationship between the proponent of the will's validity and the testator; (2) the proponent of the will's validity receives a substantial benefit under the will; and (3) the testator had a weakened intellect. *See In re Estate of Fritts*, 906 A.2d 601, 606–07 (Pa.Su-

per.2006). Once these elements are met, the burden shifts to the proponent of the will's validity to disprove undue influence. *Id.*, 906 A.2d at 606–07. As our Supreme Court has held, a testator may be of sufficient testamentary capacity to make a will but still may be subjected to the undue influence of another in the making of that will. *See In re Estate of Ziel*, 467 Pa. 531, 540, 359 A.2d 728, 733 (1976).

¶ 11 Appellant makes much of august pronouncements of our Supreme Court stating that undue influence will not be found unless there is the influence of a "strong predatory character close to a testator[,] who is possessed of a weakened mental state[, who] will prey insidiously on the weakened intellect in order to extract testamentary benefactions that would not otherwise be forthcoming." *See, e.g., Estate of Ziel*, at 543, 359 A.2d at 734–35. This pronouncement, of course, is correct. Yet, contrary to the implications of Appellant's argument, it does not provide a separate element for the trial court's consideration in an undue influence case. Rather, the rebuttable presumption of "predatory character" arises from the demonstration of the aforementioned three elements through clear and convincing evidence; if the presumption is not refuted by the proponent of the will, the party challenging the validity of the will prevails. *Id.*, at 541, 359 A.2d at 734; *see also Burns v. Kabboul*, 407 Pa.Super. 289, 595 A.2d 1153, 1164 (1991). This is because a case of undue influence is proven almost exclusively through circumstantial evidence. *Estate of Ziel*, at 541, 359 A.2d at 734. In the present case, it is clear that the trial court applied the correct standard of proof and applied the proper "shifting burden" analysis for undue influence cases. *See* Trial court opinion, 9/7/2006, at 10–18. Therefore, it is of no moment for our analysis that the trial court did not make an explic-

it finding that Appellant exhibited "predatory character" in this case. *Estate of Ziel,* at 541, 359 A.2d at 734. Accordingly, Appellant's argument fails.

■ ¶ 12 We consider next whether the trial court erred by accepting lay opinions of Mrs. Mampe's weakened intellect based upon anecdotal evidence without any medical expert testimony concerning her mental state. Appellant's argument consists of the following two arguments: (1) whether the testimony was admissible; and (2) whether the trial court assigned the proper weight to the testimony. Inasmuch as Appellant presents other challenges to the weight of the evidence to this Court, we will address Appellant's challenge to the weight of Appellees' lay opinion testimony of Mrs. Mampe's mental state *infra,* and we will confine our analysis of this issue to the admissibility of the testimony itself.

■ ¶ 13 The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. *See Croyle v. Smith,* 918 A.2d 142, 146 (Pa.Super.2007). Opinion testimony of lay witnesses is controlled by Pa.R.E. 701, which states the following:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness, helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

■ ¶ 14 As noted by Appellant, a lay witness may testify regarding matters of health, so long as his testimony is confined to facts within his knowledge, but the witness may not testify to matters involving the existence or nonexistence of a disease, which is discoverable only through the training and expertise of a medical expert. *See Baum v. Metropolitan Life Ins. Co.,* 144 Pa.Super. 37, 19 A.2d 486, 487 (1941). In the present case, there was no dispute that Appellant suffered from early-stage Alzheimer's disease. Consequently, medical expert testimony on that point was unnecessary. Further, the testimony offered by Appellees regarding Mrs. Mampe's declining mental health was limited to behaviors that she exhibited that were contrary to previous behaviors she exhibited throughout her life. Certainly, as her daughters, Appellees were able to testify as to these observable facts without running afoul of Pa.R.E. 701. Therefore, Appellant's argument fails.

■ ¶ 15 Appellant's third issue challenges the trial court's assessments of credibility and its weighing of the evidence. Our review of challenges to the weight of the evidence is extremely limited. *See Rissi v. Cappella,* 918 A.2d 131, 140 (Pa.Super.2007). We will respect the trial court's findings with regard to credibility and weight of the evidence unless it can be shown that the lower court's determination was manifestly erroneous, arbitrary and capricious, or flagrantly contrary to the evidence. *Id.,* 918 A.2d at 140. Additionally, this Court's review of a weight of the evidence claim is a review of the trial court's exercise of discretion in weighing the evidence, not of the underlying question of whether we believe that the verdict is, in fact, against the weight of the evidence. *Id.,* 918 A.2d at 140.

¶ 16 Appellant asserts that the trial court abused its discretion by placing greater weight on the testimony of Appellees Cirlot Truncellito and Louise Patejdl

than Charles Durante, Esquire, the attorney-scrivener of the 2002 will and trust, regarding the question of whether Mrs. Mampe suffered from a weakened mental state at the time of the making of the 2002 will and trust. The majority of Attorney Durante's testimony was that Mrs. Mampe knew the extent of her assets and the individuals who constituted the natural objects of her bounty, and that Mrs. Mampe made a clear decision as to how her property should pass at the time of her death. In other words, Attorney Durante's testimony revealed that Mrs. Mampe possessed testamentary capacity. *See Estate of Reichel,* 484 Pa. 610, 400 A.2d 1268 (1979) (testamentary capacity exists when testator knows natural objects of their bounty, composition of estate, and how they wish it to pass at death). Nevertheless, as our Supreme Court has often held, the weakened mental condition that must be demonstrated to present a *prima facie* case of undue influence does not rise to the level of testamentary incapacity. *See Estate of Ziel,* at 542, 359 A.2d at 734.

¶ 17 It is correct, as Appellant asserts, that the scrivener of a will, especially if a lawyer, is always an important and usually the most important witness in a contested will case, and, where the lawyer knew the testator prior to the execution of her will, his testimony showing voluntary and intelligent action by the testator makes out a *prima facie* case that requires very strong evidence to offset it. *See King Will,* 369 Pa. 523, 531, 87 A.2d 469, 474 (1952). However, this principle is not applicable in this case. The record demonstrates that Attorney Durante did not know Mrs. Mampe prior to her initial appointment in January 2002. Rather, Mrs. Mampe was referred to Attorney Durante through Appellant by Mrs. Mampe's previous attorney, John Gangi, Esquire. Appellant made the appointment for Mrs. Mampe for the making of the 2002 will and trust, and

she attended the first meeting between Attorney Durante and Mrs. Mampe. *See, e.g., Miller v. Oestrich,* 157 Pa. 264, 27 A. 742 (1893) (courts must consider who procured will to be written). Consequently, Attorney Durante's testimony regarding Appellant's voluntary and intelligent actions is not dispositive of the question of Mrs. Mampe's weakened intellect. *Cf. King Will,* at 531, 87 A.2d at 474. Wisely, the trial court chose to take a broader view of the evidence of Mrs. Mampe's mental decline in the years previous to the making of the 2002 will and trust to determine whether she suffered from a weakened intellect at the time of the making of the 2002 will and trust.

¶ 18 The record reveals that Appellees Cirlot Truncellito and Louise Patejdl provided clear and cogent testimony regarding the failing mental faculties, personality changes, and unusual behavior of Mrs. Mampe, their mother, before the execution of the 2002 will and trust. Cirlot testified that Appellant told her in September 2001 that Mrs. Mampe was diagnosed with Alzheimer's disease. Cirlot testified that Mrs. Mampe, a fastidious letter writer, was unable to punctuate her sentences properly or spell words correctly, that she would end her sentences abruptly and incorrectly, and that her handwriting was noticeably different. Likewise, Cirlot observed that, when they dined together at restaurants, Mrs. Mampe was unable to read restaurant menus properly and that she would simply order the same thing that Cirlot ordered, even if Mrs. Mampe did not care for that type of food.

¶ 19 Louise testified that Mrs. Mampe, a very private person, would leave the stall door in public restrooms open while utilizing the facilities. Louise also testified that Mrs. Mampe was unable to play miniature golf properly and that she simply would hit the ball in any direction during their out-

ings. In addition, Louise testified that, although once very concerned about her appearance, Mrs. Mampe would appear in public in an untidy, disheveled manner, and that she could not locate her room key unless she hung it around her neck. Additionally, Louise testified that Mrs. Mampe sent her duplicate birthday cards and monetary gifts.

¶ 20 The testimony of Appellees was buttressed by their witness, Anne Bowe, executive director of the Sunrise Assisted Living facility. Ms. Bowe testified that Mrs. Mampe met the mental criteria for admission into assisted living. According to Mrs. Bowe's testimony, Mrs. Mampe was diagnosed with Alzheimer's dementia in September 2001. Mrs. Mampe was a wander risk at the facility and required supervision and assistance with administering her medications. Ms. Bowe testified that Mrs. Mampe's mental state worsened until she was moved to the dementia unit in 2003, and, thereafter, moved to a separate facility.

¶ 21 Appellees' testimony was, in fact, supported in part by the testimony of Appellant. Appellant testified that Mrs. Mampe was often "confused," forgetful, and was getting "repetitive, that sort of thing" and that her doctor had seen Mrs. Mampe exhibit signs of Alzheimer's disease. Appellant also testified that Mrs. Mampe had sent her a card asking Appellant, her daughter, to marry her.

¶ 22 As held by our Supreme Court, the manifestation of undue influence may not appear until long after the weakened intellect has been played upon. *In re Clark's Estate*, 461 Pa. 52, 334 A.2d 628 (1975). In light of the great divergence between Attorney Durante's and Appellees' characterization of Mrs. Mampe's mental state, this Court's collective sense of justice is not shocked at the trial court's conclusion that Attorney Durante's testimony was of

limited value in probing the weakness of Mrs. Mampe's intellect in the time period prior to the making of the 2002 will and trust. As stated above, Attorney Durante did not know Mrs. Mampe prior to their first meeting in January 2002, and, therefore, his observations as to her mental acuity, though important, were not entirely dispositive of the question before the trial court, *i.e.*, whether Mrs. Mampe's weakened intellect led her to execute a will and trust that were the product of undue influence. Consequently, the trial court's analysis placed greater weight on the observation of Mrs. Mampe's behavior by individuals that knew her far longer than Attorney Durante. Accordingly, we discern no abuse of discretion with regard to the trial court's weighing of Attorney Durante's testimony. *Rissi*, 918 A.2d at 140.

¶ 23 Moreover, we are satisfied that the trial court did not err in accepting Appellees' lay opinion testimony of Mrs. Mampe's mental state. The observable behaviors exhibited by Mrs. Mampe prior to the making of the 2002 will and trust such as her confusion, forgetfulness, and disorientation were phenomena that were observable and within the realm of common knowledge. Our Rules of Evidence, and the rules of common sense, dictate that medical testimony is not required to establish the veracity of every illness or injury. *See, e.g.*, Pa.R.E. 701. The testimony provided on this subject by Appellees was based on observation of Mrs. Mampe's behavior and comparison with their understanding of her past behavior and habits after living with and being raised by her. Accordingly, the trial court did not abuse its discretion by crediting Appellees' testimony regarding these facts. *Rissi*, 918 A.2d at 140.

¶ 24 Lastly, we consider whether the trial court erred in concluding that

Appellant had an overmastering influence over Mrs. Mampe. This issue, in fact, questions whether a confidential relationship existed between Appellant and Mrs. Mampe. *See, e.g., Estate of Ziel,* at 542, 359 A.2d at 734 ("A confidential relationship in this sense exists whenever 'the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed [for] in both [situations] an unfair advantage is possible.' "). The overwhelming facts of record indicate that Mrs. Mampe was dependent entirely upon Appellant. Appellant, who had been Mrs. Mampe's attorney-in-fact since 1992, saw Mrs. Mampe every day and helped her with her medications, purchased necessary items, wrote checks on her behalf, and performed many activities with her. Appellant's displeasure with Cirlot led her to force Mrs. Mampe to call Cirlot and direct her to say that she did not wish to see Cirlot again. Further, Louise testified that Mrs. Mampe stated that she "needed to check with [Appellant]" when she wanted to do something and that "[Appellant] tells me what to do." Consequently, the record indicates that Appellant exerted power and influence over Mrs. Mampe's person, her finances, her activities, and regulated who had contact with her. Therefore, we have little difficulty in concluding that Appellant exercised an overmastering influence over Mrs. Mampe. *Estate of Ziel,* at 542, 359 A.2d at 734. Accordingly, Appellant's argument fails.

¶ 25 As Appellant's arguments fail, we affirm the judgment of the trial court.

¶ 26 Judgment affirmed.