**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ESTATE OF EDWARD STAHL<br><br>APPEAL OF: EDWARD STAHL | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br>No. 1764 EDA 2015 |

Appeal from the Decree entered May 5, 2015
In the Court of Common Pleas of Bucks County
Orphans' Court at No(s): 2014-0707

BEFORE: DONOHUE, J., LAZARUS, J., and PLATT, J.*

MEMORANDUM BY LAZARUS, J.: **FILED FEBRUARY 05, 2016**

Edward Stahl appeals from the Final Decree entered in the Court of Common Pleas of Bucks County, Orphans' Court Division, declaring him to be a totally incapacitated person and appointing a plenary guardian of his estate and person. Upon careful review, we affirm.

On October 15, 2014, the Bucks County Area Agency on Aging ("Agency") filed a petition for adjudication of incapacity and appointment of a guardian for the person and estate of Stahl, who is 78 years old. The petition alleged that Stahl was currently residing at Greenleaf Nursing & Convalescent, Inc., in Doylestown, Bucks County, which was "providing all medical, social and residential services" to Stahl. Petition for Appointment of

---

* Retired Senior Judge assigned to the Superior Court.

Guardian, 10/15/14, at ¶ 4. The Agency alleged that Stahl suffered from dementia and was unable to make and communicate responsible decisions about his estate or person so as to meet the essential requirements for his physical health and safety. The Agency noted that Stahl had executed a power of attorney in favor of his daughter, Mary F. Stillings, but had revoked that document on April 23, 2014. The petition proposed that Rosalind Karlin, Esquire, be appointed as Stahl's plenary guardian.

Stahl's wife, Marlene, and daughter, Stillings, filed a reply to the Agency's petition, in which they conceded Stahl's incapacity, but alleged the continuing validity of the power of attorney, as Stahl lacked capacity at the time he allegedly revoked it.[1] The Respondents further proposed that, in the event the court should determine that the power of attorney was effectively revoked, then Stillings should be appointed as guardian.[2]

---

[1] Marlene passed away in January 2015.

[2] We acknowledge that the guardianship statute expresses a legislative preference for the nominee of the incapacitated person to serve as guardian, if appropriate. ***See*** 20 Pa.C.S.A. § 5511(f). Here, although Stahl's daughter, Mary Stillings, was named as his agent under a power of attorney and originally sought appointment as guardian, Stillings declined to participate in the incapacity hearing. Moreover, at the hearing, Denise Folweiler testified that Stahl told her that he did not want his daughter to serve as either his agent or his guardian, N.T. Incapacity Hearing, 3/31/15, at 27, and Dr. Kenneth Rosenstein, the independent medical evaluator, recommended the appointment of a non-family member as guardian. This issue was not raised on appeal, although the court's appointment of Attorney Karlin is supported by the record.

The Agency submitted written interrogatories from Eunha Kim, M.D., a board-certified psychiatrist who performed an evaluation of Stahl on September 15, 2014. Dr. Kim concluded that Stahl suffered from progressive dementia, either vascular type or Parkinsonian. He further concluded that Stahl "is totally unable to manage financial resources or to meet physical and safety requirements" due to his dementia, and that he is totally incapacitated. Written Interrogatories of Dr. Kim, at 3.

The Orphans' Court appointed Legal Aid of Southeastern Pennsylvania as counsel for Stahl. Jennifer Russell, Esquire, requested that Stahl undergo an independent medical evaluation, which request the court granted by order dated November 26, 2014. Thereafter, Stahl was evaluated by Kenneth Rosenstein, M.D., a board-certified psychiatrist and neurologist with an added qualification in geriatric psychiatry. Dr. Rosenstein concluded that Stahl suffered from mild cognitive impairment, probably related to Parkinson's disease, diabetes mellitus, hypertension and a history of falls. Dr. Rosenstein concluded that Stahl "probably require[s] a guardianship, with a non-family member appointed." Independent Medical Evaluation of Dr. Rosenstein, 1/22/15, at 3. He further opined that Stahl "should be able to contribute to the decision of where he lives, as well as have input into the use of his financial resources. However, he should not have final say on these matters without advice." ***Id.***

The court held a hearing on the guardianship petition on March 31, 2014. At that time, the court received testimony from Nurse Jill Ridge, a

contract nurse with the Bucks County Area Agency on Aging ("BCAAA"); Denise Folweiler, a protective services worker with BCAAA; Rosalind Karlin, Esquire, an attorney and professional guardian; Stahl's purported "aide," Robert C. Baumner, Jr., and Stahl himself.

Nurse Ridge, who was qualified as an expert in nursing and geriatric mental status assessments, testified that she examined Stahl at his nursing home, after reviewing his medical records. Nurse Ridge stated that Stahl "lacks insight into what is needed for his care, who is able to provide that care, and also he has severely impaired safety awareness." N.T. Incapacity Hearing, 3/31/15, at 11-12. She testified that Stahl "insists that he's going to go home and walk, and seems to lack the understanding that the reason he's not allowed to independently walk through the facility is because he is such a fall risk." ***Id.*** at 12-13. Noting that both Parkinson's Disease and dementia are diseases that cause deterioration over time, Nurse Ridge opined that Stahl's "prognosis is probably not very good." ***Id.*** at 13. Nurse Ridge also testified that she believed Stahl would be subject to unscrupulous or designing persons and lacks judgment. In fact, Nurse Ridge noted that Stahl had been "giving his debit card to nursing facility staff and asking them to buy things for his home." ***Id.*** at 16. She testified that he is unable to provide his own meals and is not capable of safely monitoring his own blood sugar levels. Finally, Nurse Ridge testified that there are no less restrictive alternatives for Stahl's safe care other than the appointment of a guardian of his person and estate.

Denise Folweiler testified that she first became acquainted with Stahl in July 2014, when he was a resident at Neshaminy Manor and sought to discharge himself from the facility. At the time, Folweiler believed that Stahl was an "unsafe discharge" because he was incapable of caring for himself in the community. ***Id.*** at 24. Stahl was ultimately discharged to an apartment, but shortly thereafter sustained a fall and was taken to Doylestown Hospital. Folweiler met with him in the hospital, where he was found to have been suffering from a urinary tract infection and had failed to take his diabetes medicine, which disrupted his blood sugar levels. Folweiler stated that Stahl was ultimately discharged to his current residence, Greenleaf Nursing Facility, where she met with him on October 30, 2014 to serve and explain the guardianship petition. Folweiler testified that Stahl continued to express his desire to live independently, told her that he was going to apply for a mortgage, and "just didn't seem to grasp that it was not safe for him to be out in the community." ***Id.*** at 26. Folweiler also attended the meeting described by Nurse Ridge during her testimony. Folweiler stated that Stahl continued to express puzzlement as to why he was unable to walk and did not "seem to comprehend that . . . he had a decline and . . . that he needs to be safe in the community." ***Id.*** at 29. Folweiler, who met with Stahl a total of five times, testified that Stahl requires 24-hour care and supervision and is incapable of making safe decisions for himself.

Stahl also testified at the incapacity hearing. When asked what illnesses he suffers from, Stahl testified as follows:

> I had Parkinson's disease in my leg. That was cured when I went to the first nursing home. And now I have diabetes. I've had dia – I think I have diabetes. They haven't checked my blood in a year. They usually check your blood, take your fingers, see your sugar count. They have never done that. I keep getting injections for diabetes and take medication.

***Id.*** at 44. Stahl testified that he planned to purchase a condominium and that, when he needed his medication, he would call the VA and "they would send them to me." ***Id.*** at 46. Stahl testified that his "aide," whose name Stahl stated was "Bob Schroeder," would take him to the grocery store when he needed food and would also take him to the doctor's office.

Finally, Robert C. Baumner, Jr., identified by Stahl as "Bob Schroeder," testified that he had known Stahl for three months. He stated that he has taken Stahl out to lunch and to the store, helped him get a phone, and taken him to look for a residence. He stated he would be willing to continue this type of assistance in the future, but would not be willing to act as Stahl's 24-hour caregiver.

Following the hearing, the court issued a Final Decree declaring Stahl to be totally incapacitated and appointing Attorney Karlin as plenary guardian of his estate and person. This appeal follows,[3] in which Stahl raises the following issues for our review:

---

[3] A rather convoluted series of events followed the court's entry of the Final Decree, which we detailed in our previous memorandum in this matter. ***See Estate of Edward Stahl***, 1764 EDA 2015 (filed on December 2, 2015) (unpublished memorandum decision). As a result of those unique circumstances, we remanded the case to the trial court for the preparation
*(Footnote Continued Next Page)*

> 1. Did the Orphans' Court render a decision against the weight of the evidence when it concluded Appellant was totally incapacitated in the face of equivocal testimony concerning [the] alleged incapacitated person's capacity from a prior doctor, and stronger testimony from the court-appointed doctor who examined Appellant most recently and in more detail and who concluded that Appellant was experiencing only "mild cognitive impairment," that he was alert and capable of understanding his finances and cooperative in taking medication?
>
> 2. Did the Orphans' Court commit legal error by not applying the statutory presumption or preference for partial incapacity over total incapacity and by not considering less restrictive alternatives to plenary guardianship?

Brief of Appellant, at 4.

Stahl first asserts that the Orphans' Court's decision was against the weight of the evidence. We begin by noting:

> Our review of challenges to the weight of the evidence is extremely limited. We will respect the trial court's findings with regard to credibility and weight of the evidence unless it can be shown that the lower court's determination was manifestly erroneous, arbitrary and capricious, or flagrantly contrary to the evidence. Additionally, this Court's review of a weight of the evidence claim is a review of the trial court's exercise of discretion in weighing the evidence, not of the underlying question of whether we believe that the verdict is, in fact, against the weight of the evidence.

***In re Mampe***, 932 A.2d 954, 960 (Pa. Super. 2007) (internal citations omitted).

Stahl asserts that the Orphans' Court erred by placing greater weight on the "equivocal" deposition testimony of Dr. Kim rather than the

*(Footnote Continued)*

of a Pa.R.A.P. 1925(a) opinion addressing the two issues Stahl raised on appeal. The matter is now ripe for adjudication.

"stronger" testimony of the court-appointed examiner, Dr. Rosenstein, who had examined Stahl more recently and concluded that Stahl was experiencing only "mild cognitive impairment." Stahl argues that Dr. Rosenstein's report was more detailed, while Dr. Kim's was conclusory. Stahl also argues that, to the extent the court considered the testimony of Nurse Ridge, her observations should have been discounted because her methods were unscientific. Finally, Stahl argues that the court neglected to consider Stahl's own testimony, which he claims demonstrated that he "clearly understood the nature of the proceedings, answered questions posed to him directly and cogently, and intelligently explained why he wished to live as a free man." Brief of Appellant, at 17.

In its opinion, the Orphans' Court thoroughly reviewed the testimony presented by the parties and concluded that "[t]he overwhelming weight of the evidence clearly and convincingly supports our determination that Mr. Stahl is in need of a plenary guardian of his person and estate." Orphans' Court Opinion, 12/29/15, at 4. The court noted that, while Dr. Rosenstein's opinion as to Stahl's need for a guardian was "less definitive" than Dr. Kim's, Dr. Rosenstein nonetheless observed that Stahl's "concrete thinking can interfere with his ability to make safe choices." Independent Medical Evaluation of Dr. Rosenstein, 1/22/15, at 2. The court also cited Dr. Rosenstein's findings that Stahl requires assistance in administering his medications and with the activities of daily living, and requires supervision to remind him of his risk of falls. The court noted Dr. Rosenstein's conclusion

that the least restrictive alternative available to Stahl is "probably . . . a guardianship, with a non-family member appointed." ***Id.*** at 3.

The Orphans' Court also reviewed the testimony of the other witnesses who testified at trial. Our review of that testimony reveals a consistent theme of Stahl's inability to make responsible decisions regarding his physical health and safety, particularly with regard to controlling his diabetes and preventing falls. Both Nurse Ridge and Social Worker Folweiler emphasized Stahl's lack of insight into his own needs and limitations, and concluded that there was no less restrictive alternative to a plenary guardianship.

Finally, Stahl's own testimony reinforced the observations of the other witnesses regarding his lack of insight and inability to make decisions in his own best interest. In remarks at the conclusion of the incapacity hearing, the trial court noted that Stahl's testimony regarding his Parkinson's disease and diabetes simply did not reflect the reality of the situation:

> THE COURT: Okay. So Mr. Stahl, I do recognize that this is difficult for you. I get it. I really do. And I admire your independence and your desire to be free. I understand that fully.
>
> The problem is, there's pretty overwhelming medical evidence of some issues that you're not really recognizing. No one's blaming you for not recognizing it. It's just reality. Parkinson's is not something you get in one leg, for example. That's something you need to talk to a doctor about so you have a better understanding of that.
>
> . . .

> And your diabetes? You know, you said you haven't had a – your blood tested in a year. I just don't think that's accurate.

N.T. Incapacity Hearing, 3/31/15, at 57-58.

Based on the foregoing, we find that the Orphans' Court's conclusion that its determination was not against the weight of the evidence to be fully supported by competent evidence of record. ***In re Mampe***, ***supra***. Accordingly, Stahl is entitled to no relief on this claim.

Next, Stahl claims that the Orphans' Court committed legal error by failing to apply the statutory presumption in favor of partial incapacity by failing to consider less restrictive alternatives to a plenary guardianship. Stahl argues that the court "neglected to make any finding of fact concerning whether a limited guardianship would be more appropriate than a plenary guardianship. Nor did the court make any distinction concerning whether Mr. Stahl required a guardian over his personal care, as compared to his finances." Brief of Appellant, at 18-19. The record does not support this claim.

Chapter 55 of the Probate Estates and Fiduciaries Code ("PEF" Code), relating to incapacitated persons, reflects the clear intent of the legislature that courts should, where possible, prefer limited over plenary guardianships. Section 5502 of the PEF Code sets forth the legislature's intent to establish a system:

> which permits incapacitated persons to participate as fully as possible in all decisions which affect them, which assists these persons in meeting the essential requirements for their physical

> health and safety, protecting their rights, managing their financial resources and developing or regaining their abilities to the maximum extent possible and which accomplishes these objectives through the use of the least restrictive alternative[.]

20 Pa.C.S.A. § 5502.

However, where the court determines, based upon clear and convincing evidence, that an individual's "ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is . . . totally unable to manage his financial resources or to meet essential requirements for his physical health and safety," 20 Pa.C.S.A. § 5501, the court may appoint a plenary guardian of the person and estate.

Here, the record reflects that the Orphans' Court did, in fact consider whether less restrictive alternatives were available. ***See*** Orphans' Court Opinion, 12/29/15, at 11. The court also commended Stahl for his "passion, pride, and desire for total independence." Orphans' Court Opinion, 6/16/15, at 5. However, in light of what the court deemed the "overwhelming weight of the evidence presented," it saw no less restrictive alternative than the appointment of a plenary guardian to act on Stahl's behalf in order to ensure his physical safety, health and financial well-being. The record supports this finding, and we can discern no legal error on the part of the court in arriving at its decision.

Decree affirmed.

DONOHUE, J., Did not participate in the consideration or decision of this memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/5/2016